# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Karim G. El-Ghazzawy,

                 Plaintiff,

Civ. No. 09-372 (RHK/AJB)
**MEMORANDUM OPINION
AND ORDER**

v.

Kay Berthiaume, acting in her
individual capacity as an officer of
the Bloomington Police Department,
Michael David Wisniewski, and Pawn
America, Minnesota, L.L.C.,

                 Defendants.

---

Robert Bennett, Jeffrey S. Storms, Flynn Gaskins & Bennett, LLP, Minneapolis, Minnesota, for Plaintiff.

Jason M. Hiveley, Iverson Reuvers, LLC, Bloomington, Minnesota, for Defendant Kay Berthiaume.

Mark A. Smith, Wrobel & Smith, PLLP, St. Paul, Minnesota, for Defendants David Wisniewski and Pawn America, Minnesota, L.L.C.

---

## INTRODUCTION

In this action, Plaintiff Karim G. El-Ghazzawy has sued: (1) Officer Kay Berthiaume of the Bloomington Police Department, alleging violation of his Fourth-Amendment rights and (2) Michael David Wisniewski and Pawn America, Minnesota, L.L.C. ("Pawn America"), alleging state-law defamation and false imprisonment. All

Defendants now move for summary judgment.  For the reasons set forth below, the Court will deny Berthiaume's Motion and grant Wisniewski and Pawn America's Motion in part and deny it in part.

## BACKGROUND

Viewed in the light most favorable to El-Ghazzawy, see Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000), the events giving rise to this action are as follows.

El-Ghazzawy is an attorney whose hobby is collecting high-end wrist watches. (El-Ghazzawy Dep. Tr. at 15-16, 35-36.)  Part and parcel of this hobby is purchasing and selling watches.  (Id. at 46-47, 51-52.)  Pawn America is a pawnshop chain with several locations throughout Minnesota.  (Wisniewski Dep. Tr. at 7.)  Pawn America purchases high-quality items, such as watches, for resale.  (Joshi Dep. Tr. at 30.)  Wisniewski is employed by Pawn America as a District Manager, managing several Pawn America stores in Minnesota and South Dakota.  (Wisniewski Dep. Tr. at 7, 109.)

On October 29, 2008, El-Ghazzawy went to the Bloomington Pawn America to sell five or six high-end watches.  (Schmidt Dep. Tr. at 25-27.)  Pawn America employee Robert Schmidt inspected the watches and researched their authenticity.  (Id. at 27-34.)  Schmidt purchased two watches, a Corum and an Ebel, for $800 and $400, respectively. (Storms Aff. Ex. J.)  Schmidt never expressed any concerns regarding the authenticity of these watches to anyone at Pawn America.  (Schmidt Dep. Tr. at 32-33.)

The following day, El-Ghazzawy returned to the Bloomington Pawn America looking to sell additional watches. (El-Ghazzawy Dep. Tr. at 30.) Pawn America employee Jon Garner inspected the watches. (Garner Dep. Tr. at 7-13.) Garner was interested in purchasing two of the watches, but required the purchasing approval of Wisniewski for transactions exceeding $1,000. (Id. at 48.) Upon describing the watches over the telephone to Wisniewski, Garner obtained the necessary approval and purchased a Breitling watch and Baume Mercier watch from El-Ghazzawy for $1,200 and $1,500, respectively. (Id. at 48; Storms Aff. Ex. J.)

El-Ghazzawy returned to the Bloomington Pawn America a third time on November 11, 2008, to sell five additional watches. (El-Ghazzawy Dep. Tr. at 61-62.) He initially discussed the sale with Schmidt, who decided to have Wisniewski handle the transaction. (Schmidt Dep. Tr. at 44.) Wisniewski looked briefly at the watches offered for sale and observed El-Ghazzawy pull several tags off of the watches. (El-Ghazzawy Dep. Tr. at 64; Wisniewski Dep. Tr. at 66-67.) Wisniewski asked El-Ghazzawy how much he had paid for the watches, but El-Ghazzawy refused to provide this information. (Wisniewski Dep. Tr. at 66-67.) Sellers usually do not provide such information when attempting to sell items to Pawn America. (Garner Dep. Tr. at 55.)

Wisniewski then decided to inspect the Breitling watch that Pawn America had purchased from El-Ghazzawy two weeks earlier.[1]  (Wisniewski Dep. Tr. at 104-06.)  Based upon research conduced on several Web sites and a visual review of the watch, Wisniewski determined that the Breitling was a fake.  (Id. at 19.)  Specifically, he believed that the watch was a counterfeit because the symbol was tilted, the numbers were blurry, the dial was not detailed or crisp, and the weight was off.  (Id. at 59.)  Wisniewski thereafter assumed that all the watches previously and presently offered by El-Ghazzawy for sale were fake.  (Wisniewski Dep. Tr. at 19-21.)  Wisniewski also believed El-Ghazzawy's transaction history was suspicious.  (Id. at 49.)

Based upon his belief that all the watches offered for sale by El-Ghazzawy were counterfeit, Wisniewski called the Bloomington Police Department.  (Id. at 48-49.)  This phone call took place seventeen minutes after El-Ghazzawy entered the Pawn America.  (Id.; Angolkar Aff. Ex. B.)  Wisniewski told the dispatcher that he had a man in the store "who has sold us some fake watches in the past . . . [he] is standing with a bunch of fake watches.  At least five of them."  (Angolkar Aff. Ex. B.)

The record reveals that Wisniewski's physical inspection of the Breitling watch was brief.  He reviewed several Breitling Web sites, but did not begin the inspection of the watch itself until he entered the back office at 10:13:52.  (Surveillance "Office" View.)  This inspection must have ceased no later than 10:15:01, the time at which he

---

[1] Wisniewski contends that Schmidt expressed concerns regarding the authenticity of the Breitling (Wisniewski Dep. Tr. at 74-75), but Schmidt does not recall expressing such concerns

called the police. (Id.) Accordingly, Wisniewski's inspection of the Breitling lasted, at most, one minute and eight seconds.

Upon receipt of Wisniewski's call, the police dispatcher sent Berthiaume to the scene. Prior to arriving, Berthiaume was told the following:

> I'll put you in the area of Pawn America, 8650 Lyndale. They have a male there that's ah . . . employee called in. They have a male that's returned. He . . . in the past, sold counterfeit watches. Apparently he's trying to do it again. Mixed race male, wearing the suit.

(Angolkar Aff. Ex. B.) Berthiaume arrived at the scene, approached El-Ghazzawy, and immediately placed him in handcuffs. (El-Ghazzawy Dep. Tr. at 91-92.)

Officer Larry Mena arrived three to five minutes after Berthiaume and stood with El-Ghazzawy as Berthiaume went into the back room with Wisniewski to investigate. (Mena Dep. Tr. at 16-17.) Wisniewski informed Berthiaume of El-Ghazzawy's sales history and described why he believed the Breitling watch was counterfeit. (Angolkar Aff. Ex. A; Berthiaume Dep. Tr. at 102-06.) Wisniewski informed Berthiaume that all the other watches purchased by Pawn America from El-Ghazzawy or offered for sale by him were counterfeit, without describing a basis for this belief. (Id.) Berthiaume relied upon the statements of Wisniewski. (Berthiaume Dep. Tr. at 49.) Berthiaume also discussed the watches with El-Ghazzawy, who asserted that they were authentic and that he had receipts to prove it. (El-Ghazzawy Dep. Tr. at 93-94, 104-05.)

---

(Schmidt Dep. Tr. at 48).

El-Ghazzawy contends that Wisniewski spoke to him in front of Berthiaume in a "berating" manner. (Id. at 193.) Specifically, Wisniewski stated that he wanted the money returned that Pawn America had paid to El-Ghazzawy. (Id.) When El-Ghazzawy stated that he would do so, Wisniewski told Berthiaume that El-Ghazzawy was "not going to come back and give him the money." (Id.)

Berthiaume determined that she had probable cause to arrest El-Ghazzawy for theft by swindle and transported El-Ghazzawy to the Bloomington Police Department. (Angolkar Aff. Ex. A.) There is no evidence that El-Ghazzawy affirmatively represented that the watches he offered for sale were authentic prior to Berthiaume's arrival on the scene. (Berthiaume Dep. Tr. at 53-54.)

El-Ghazzawy spent 23 hours at the Bloomington jail. (El-Ghazzawy Dep. Tr. at 101.) Bloomington Police Detective Douglas Barland investigated the theft-by-swindle charge. (Barland Dep. Tr. at 17.) El-Ghazzawy's wife brought the watch receipts to Barland, and at that time El-Ghazzawy was released pending further investigation. (Angolkar Aff. Ex. A.) During this investigation, Garner informed Barland that he believed El-Ghazzawy's watches to be authentic. (Barland Dep. Tr. at 114.) Barland then took the watches to expert Bill Weigel, who inspected them and determined they were authentic.[2] (Id. at 9; Storms Aff. Ex. R; Angolkar Aff. Ex. A.) Accordingly,

---

[2] Wisniewski also took the Breitling watch to an expert, who determined it to be authentic. (Wisniewski Dep. Tr. at 97-99.) However, Wisniewski contends that this expert stated that the watch did appear to have some flaws as it was a "B-type product." (Id. at 59.) El-Ghazzawy contends that this evidence constitutes inadmissible hearsay. (Mem. in Opp'n at 17.) Because

Barland closed the investigation.  (Angolkar Aff. Ex. A.)  Pawn America later sold the

Breitling watch.  (Wisniewski Dep. Tr. at 37.)[3]

In February 2009, El-Ghazzawy commenced the instant action asserting three

causes of action:  (1) violation of the Fourth Amendment against Berthiaume;

(2) defamation against Wisniewski and Pawn America; and (3) false imprisonment

against Wisniewski and Pawn America.  All Defendants now move for summary

judgment.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the

nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  Id. at 322; Mems v. City of St. Paul, Dep't of

Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the

evidence, and the inferences that may be reasonably drawn from it, in the light most

---

the Court's holding is not altered by this evidence, the Court need not address this issue at this time.
[3] El-Ghazzawy requests that the Court sanction Wisniewski and Pawn America for the spoliation of evidence through the sale of the Breitling watch.  (Mem. in Opp'n at 18.)  However, in order for such a sanction to be appropriate, "there must be a finding of intentional destruction indicating a desire to suppress the truth."  Stevenson v. Union Pacific R.R. Co., 354 F.3d 739, 746 (8th Cir. 2004).  There is no evidence of a desire to suppress the truth in this case.  Pawn America sold the Breitling watch pursuant to its usual business practices prior to the initiation of this action. El-Ghazzawy was provided with the information regarding the name and address of the buyer. (Smith Aff. Ex. A.)  There is no evidence indicating Pawn America's desire to destroy evidence. More importantly, El-Ghazzawy does not contend that he has attempted to locate the

favorable to the nonmoving party.  <u>Graves</u>, 229 F.3d at 723; <u>Calvit v. Minneapolis Pub. Schs.</u>, 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Krenik v. County of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

### I.      The federal claim

The Court begins its analysis with El-Ghazzawy's federal claim, which provides the basis for the Court's subject-matter jurisdiction.  El-Ghazzawy has sued Berthiaume in her individual capacity, alleging that she arrested him without probable cause in violation of the Fourth Amendment.  In response, Berthiaume asserts that she is entitled to qualified immunity.

When analyzing whether a police officer is entitled to qualified immunity, a court must conduct a two-part inquiry.  First, it must consider whether the facts alleged, when viewed in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right.  If a violation can be established based on those facts, the court must then inquire into whether the constitutional right at issue was clearly established at the time the violation occurred.  <u>E.g.</u>, <u>Avalos v. City of Glenwood</u>, 382 F.3d 792, 798 (8th Cir. 2004).

---

watch and has been unable to find it.  Accordingly, a spoliation sanction will not be imposed.

The Fourth Amendment guarantees individuals the right to be free from arrest without probable cause.  E.g., Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005).  Even where probable cause is not present, however, an officer is entitled to qualified immunity if probable cause *arguably* existed at the time of the arrest.  Id.  This is because "the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable."  Id.  Therefore, the operative test is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officer[] possessed."  Anderson v. Creighton, 483 U.S. 635, 641 (1987).

## A.    When did the arrest occur?

In order to address whether Berthiaume had arguable probable cause to arrest El-Ghazzawy, the Court must first determine *when* the arrest occurred, an issue the parties hotly dispute.  El-Ghazzawy contends that he was arrested when Berthiaume placed him in handcuffs.  (Mem. in Opp'n at 19-23.)  Berthiaume contends that an arrest occurred in Pawn America, but only after she conducted an investigation by interviewing Wisniewski and El-Ghazzawy and inspecting the watches.  (Mem. in Supp. at 10-14.)  Berthiaume contends that she only *detained* El-Ghazzawy when she placed him in handcuffs in order to investigate Wisniewski's allegations.  (Id. at 9-10.)

"It is well established that both investigative stops and arrests are 'seizures' under Fourth Amendment law.  However, while an investigative stop must be supported by reasonable, articulable suspicion that criminal activity may be afoot, an arrest must be

supported by probable cause." United States v. Raino, 980 F.2d 1148, 1149 (8th Cir.

1992). There is no bright-line rule distinguishing between investigative stops and arrests.

United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992). An officer "may check for

weapons and may take additional steps reasonably necessary to protect their personal

safety and maintain the status quo during [an investigative] stop." Id. (internal quotation

marks and citation omitted). However, "[a]n action tantamount to arrest has taken place

if the officer['s] conduct is more intrusive than necessary." United States v. Rose, 731

F.2d 1337, 1342 (8th Cir. 1984).

"[H]andcuffs are a hallmark of a formal arrest." United States v. May, 440 F.

Supp. 2d 1016, 1029 (D. Minn. 2006) (Kyle, J.) (citing New York v. Quarles, 467 U.S.

649, 655 (1984)); accord United States v. Acosta-Colon, 157 F.3d 9, 18 (1st Cir. 1998)

("There is no question that the use of handcuffs [is] one of the most recognizable indicia

of a traditional arrest."). The use of handcuffs does not *always* convert an investigative

stop into an arrest. United States. v. Saffeels, 982 F.2d 1199, 1206 (8th Cir. 1992)

(vacated on other grounds). However, several circuits have noted that under ordinary

circumstances, the use of handcuffs generally exceeds the scope of a lawful investigative

detention. United States v. White, 584 F.3d 935, 952 (10th Cir. 2009); United States v.

Vargas, 369 F.3d 98, 102 (2d Cir. 2004); Washington v. Lambert, 98 F.3d 1181, 1187

(9th Cir. 1996); United States v. Glenna, 878 F.2d 967, 972 (7th Cir. 1989).[4]

---

[4] Berthiaume asserts that "[t]he Eighth Circuit has upheld the use of handcuffs to detain while
investigating for an hour or longer." (Reply at 2 (citing United States v. Bloomfield, 40 F.3d

To determine whether the amount of force utilized during an investigative stop constitutes an arrest, the Court considers the following factors:

> (1) the number of officers and police cars involved, (2) the nature of the crime and whether there is reason to believe the suspect is armed, (3) the strength of the officer's articulable, objective suspicions, (4) the need for immediate action by the officer, (5) the presence or lack of suspicious behavior or movement by the person under observation, and (6) whether there was an opportunity for the officer to have made the stop in less threatening circumstances.

Fakorzi v. Dillard's, Inc., 252 F. Supp. 2d 819, 827-28 (S.D. Iowa 2003) (quoting United States v. Thompson, 906 F.2d 1292, 1296 (8th Cir. 1990)).  Applying these factors to the instant action, the Court determines that Berthiaume's use of handcuffs was more intrusive than necessary for an investigative stop, thereby converting it into an arrest.[5]

First, while Berthiaume was the only officer at Pawn America at the time El-Ghazzawy was placed in handcuffs, another officer was in route and arrived within five minutes.  Nevertheless, the handcuffs were not removed upon the second officer's arrival.

---

910, 917 (8th Cir. 1994), and United States. v. White, 42 F.3d 457, 460 (8th Cir. 1994)).)
However, neither Bloomfield nor White involved the use of handcuffs.  In fact, in holding that an investigatory stop was not a de facto arrest in Bloomfield, the court noted that the suspect was "not physically restrained in any way."  40 F.3d at 917.

[5] Berthiaume asserts that the Court should also consider the duration of the investigative stop to determine whether it constitutes a de facto arrest.  (Reply at 2.)  Indeed, an investigative stop can become a de facto arrest if unduly lengthy.  United States v. Sharpe, 470 U.S. 675, 685 (1985).  However, the duration of the detention is not directly relevant to whether an officer's use of force converts an investigatory detention into an arrest.  See United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999) ("[An investigatory] stop may turn into an arrest if the stop lasts for an unreasonably long time or if officers use unreasonable force.") (emphasis added).  Even a short detention may be an arrest if an officer utilizes unreasonable force.  See Fakorzi, 252 F. Supp. 2d at 829 (holding that a thirty-minute detention was not a reasonable investigative stop when plaintiffs were handcuffed and placed in squad cars).

Moreover, Berthiaume was never alone with El-Ghazzawy because at least two Pawn America employees were also present. Accordingly, the fact that Berthiaume was the only officer on scene provides little justification for the use of handcuffs. See Fakorzi, 252 F. Supp. 2d at 828 (the fact that the defendant was the only officer on scene provided insufficient justification for the use of handcuffs when other company employees and security personnel were present).

Second, the crime suspected, theft by swindle, is not a crime of violence. There is nothing in the record to suggest that Berthiaume believed El-Ghazzawy to be armed or dangerous. Accordingly, the nature of the crime does not support Berthiaume's use of handcuffs. See United States v. Navarrete-Barron, 192 F.3d 786, 791 (8th Cir. 1999) (use of handcuffs did not convert investigative stop into an arrest when the use of handcuffs was reasonably necessary to protect personal safety when confronted with persons suspected of "drug trafficking, which very often is accompanied by dangerous weapons"); Saffeels, 982 F.2d at 1205-06 (use of handcuffs permissible during investigative stop when there was reason to believe the suspect possessed a sawed-off shotgun); Miller, 974 F.2d at 957 (use of handcuffs permissible during investigative stop when officers were outnumbered by persons suspected of drug trafficking, a crime that created a reasonable concern that the suspects were armed). In fact, Berthiaume cites no Eighth Circuit case, and the Court finds none, where the use of handcuffs was condoned as part and parcel of an investigative detention when the crime suspected was not considered a dangerous crime.

Third, nothing in the record suggests that Berthiaume was required to take immediate action under the circumstances presented. El-Ghazzawy did not act in any way indicating that he was going to be uncooperative or flee the scene. Finally, Berthiaume could have made the investigative stop in a less intrusive manner. There is no evidence that Berthiaume could not have conducted her investigation without the use of handcuffs.[6] Because there was no evidence that El-Ghazzawy was a flight risk or dangerous, handcuffs simply were unnecessary.

In sum, Berthiaume has failed to put forth any specific facts, other than being the only officer initially on the scene, supporting the use of handcuffs in this case.[7] Accordingly, the Court finds that the use of handcuffs exceeded the bounds of an investigative stop. Thus, El-Ghazzawy was arrested when the handcuffs were utilized, requiring the existence of probable cause at that time to be constitutionally permissible.

**B.    Did Berthiaume have arguable probable cause when El-Ghazzawy was arrested?**

As stated above, Berthiaume is entitled to qualified immunity if probable cause *arguably* existed at the time she effectuated the arrest. Walker, 414 F.3d at 992. "Probable cause" exists when the "facts and circumstances within the officer's knowledge

---

[6] As El-Ghazzawy noted during oral argument, Berthiaume did not even begin to conduct her investigation until a backup officer arrived. Accordingly, handcuffs were not needed in order to allow Berthiaume to investigate the theft-by-swindle accusation.

[7] The Court notes that if the fact that Berthiaume was the only responding officer was enough to justify the use of handcuffs in this case, then this measure would be justified in every investigatory stop where the officer is alone, a conclusion for which there is no support in the

and of which the officer [has] reasonably trustworthy information [are] sufficient to warrant a prudent man in believing" that a crime has been committed. Williams v. City of Carl Junction, Mo., 480 F.3d 871, 877 (8th Cir. 2007) (internal quotation marks and citation omitted).

The Court finds that there was no arguable probable cause at the time El-Ghazzawy was placed in handcuffs. Most importantly, Berthiaume does not even argue that arguable probable cause existed at that time. In fact, Berthiaume concedes that officers are constitutionally required to investigate charges of criminal conduct prior to effectuating an arrest. (Mem. in Supp. at 10-11.) Specifically, officers "have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking to arrest." Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (internal quotation marks and citation omitted); see also Amrine v. Brooks, 522 F.3d 823, 832-33 (8th Cir. 2008) ("[I]n the absence of exigent circumstances an officer who unreasonably fails to investigate an incident sufficiently before arresting a suspect is not entitled to qualified immunity."); Olsen v. Layton Hills Mall, 312 F.3d 1304, 1313 (10th Cir. 2002) (no qualified immunity when officer conducted no investigation prior to the arrest); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("If officers . . . did not independently investigate [alleged victim's] claim of battery, they did not have probable cause to

case law.

arrest.").

Here, Berthiaume conducted <u>no</u> investigation prior to placing handcuffs on El-Ghazzawy.  There were no exigent circumstances preventing an investigation prior to this arrest and Berthiaume would not have been unduly hampered by conducting such an investigation.  In fact, Berthiaume acknowledged during her deposition that she had an obligation to investigate the facts prior to arresting El-Ghazzawy.  (Berthiaume Dep. Tr. at 74.)  Accordingly, the Court finds that, viewing the evidence in the light most favorable to El-Ghazzawy, a constitutional violation occurred when El-Ghazzawy was arrested without arguable probable cause.

### C.      Was the constitutional violation clearly established?

The Court's inquiry does not end here, however.  Berthiaume is still entitled to qualified immunity, in the face of a constitutional violation, if the constitutional right at issue was not "clearly established" at the time the violation occurred.  <u>Avalos</u>, 382 F.3d at 798.  Berthiaume asserts that "it was not clearly established [that] a reasonable officer would not arrest Plaintiff under similar circumstances."  (Mem. in Supp. at 20.) However, the "circumstances" Berthiaume refers to relate to her contention that she only arrested El-Ghazzawy <u>after</u> she conducted an investigation.  As described above, the Court finds that the arrest occurred before Berthiaume conducted <u>any</u> investigation.

Moreover, even if argued, Berthiaume could not credibly assert that the constitutional violation at hand was not clearly established at the time El-Ghazzawy was arrested.  "For a constitutional right to be clearly established, its contours must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks and citation omitted). The right not to be arrested without probable cause has long been held to be clearly established. Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996). Here, Berthiaume admitted that she was required to conduct an investigation prior to arresting El-Ghazzawy in order to establish probable cause. The duty to conduct such an investigation has long been the law in the Eighth Circuit. Kuehl, 173 F.3d at 650. Moreover, "any reasonable officer would understand that it is unconstitutional to handcuff someone absent probable cause or an articulable basis to suspect a threat to officer safety combined with reasonable suspicion." Manzanares v. Higdon, 575 F.3d 1135, 1150 (10th Cir. 2009); see also Thompson, 906 F.2d at 1296. Accordingly, the Court finds that the constitutional right at issue in this case was clearly established at the time of the relevant events. Therefore, Berthiaume has not met her burden in establishing her right to qualified immunity and El-Ghazzawy's Fourth-Amendment claim will stand.

## II.     The state-law claims

Having concluded that El-Ghazzawy's federal claim survives Berthiaume's Motion for Summary Judgment, the Court must turn its attention to El-Ghazzawy's state-

law claims against Wisniewski and Pawn America[8], over which the Court has supplemental jurisdiction. See 28 U.S.C. § 1367.

**A.    Defamation**

El-Ghazzawy's first state-law claim is for defamation. Specifically, El-Ghazzawy contends that Wisniewski defamed him when he stated to police dispatch that El-Ghazzawy had sold Pawn America several counterfeit watches in the past and was then attempting to sell additional counterfeit watches. Wisniewski and Pawn America assert that this defamation claim must be dismissed for three reasons: (1) El-Ghazzawy's failure to plead special damages; (2) statutory immunity; and (3) common-law qualified privilege. The Court addresses each argument below.

**1.    Defamation and damages**

"The elements of a common law defamation action are well settled. In order for a statement to be considered defamatory it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him in the estimation of the community." Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980). However, defamation by spoken word, otherwise known as "slander," is not actionable absent proof of special damages unless the defamatory statement falls within one of the categories of defamation *per se*. Anderson v. Kammeier, 262 N.W.2d 366, 372 (Minn. 1977). "Statements are defamatory per se if they falsely

---

[8] Pawn America does not challenge El-Ghazzawy's assertion that it is liable for the actions of Wisniewski under the doctrine of respondeat superior.

accuse a person of a crime." <u>Longbehn v. Schoenrock</u>, 727 N.W.2d 153, 158 (Minn. Ct. App. 2007). Here, El-Ghazzawy does not present proof of special damages, contending that the statements of Wisniewski were defamatory *per se* because they falsely accused him of a crime.[9]

Wisniewski and Pawn America contend that Wisniewski's statements alleging that El-Ghazzawy had sold and was attempting to sell counterfeit watches is not defamation *per se* because selling counterfeit watches in and of itself is not a crime. (Mem. in Supp. at 24-27.) Specifically, they contend that "Wisniewski's report did not allege that Plaintiff had knowingly sold fake watches, was trafficking in counterfeit watches or had made representations to induce or 'swindle' the store." (<u>Id.</u> at 25.) However, "[w]ith regard to false accusations of a crime, the words need not carry upon their face a direct imputation of crime." <u>Longbehn</u>, 727 N.W.2d at 158 (internal quotation marks and citation omitted). Instead, "[i]t is sufficient if the words spoken, in their ordinary acceptance, would naturally and presumably be understood, in the connection and under the circumstances in which they are used, to impute a charge of crime." <u>Id.</u> at 159.

---

[9] Wisniewski and Pawn America contend that the statements regarding the authenticity of the watches concerned the watches only, and did not impugn El-Ghazzawy. (Mem. in Supp. at 26-27.) The Court finds this argument to be disingenuous at best. The statements made by Wisniewski to police dispatch clearly implicate El-Ghazzawy: "I have a gentleman here right now who has sold us some fake watches in the past . . . He is standing with a bunch of fake watches." (Angolkar Aff. Ex. B.) These statements refer to El-Ghazzawy's actions in selling the watches, and do not pertain solely to the watches as Wisniewski and Pawn America contend.

Here, the very fact that Wisniewski called police dispatch indicates that he believed selling counterfeit goods was illegal. Moreover, while El-Ghazzawy never represented to Pawn America that the watches he was selling were authentic or counterfeit, the Minnesota courts have not addressed the issue of whether there can be a theft by swindle by *omission*. See State v. Flicek, 657 N.W.2d 592, 598 n.5 (Minn. Ct. App. 2003) ("We leave for another day when and whether omissions or silence may support a theft-by-swindle count."). Moreover, the "trick" of presenting a watch appearing to be authentic through the use of a trademark name or unique trademark features may also be sufficient to constitute theft by swindle. See State v. Rice, No. A07-1559, 2008 WL 4394173, at *3 (Minn. Ct. App. Sept. 30, 2008) ("To prove . . . theft by swindle, it [is] only necessary for the state to show that [the defendant] . . . employed some sort of trick to dispel the victim's normal suspicion or caution."). In addition, the trafficking of counterfeit goods is also considered a crime. Lagunas-Salgado v. Holder, 584 F.3d 707, 711 (7th Cir. 2009) (citation omitted). But more importantly, "the test is not whether the speaker intended to make an accusation, but whether a reasonable person under similar circumstances would understand the statement as making an accusation or imputing criminal" conduct upon the plaintiff. Longbehn, 727 N.W.2d at 159. Here, it appears that all involved took Wisniewski's allegation to be an allegation of potential criminal conduct.[10] In fact, this allegation led to the arrest of El-Ghazzawy. Accordingly,

_____

[10] Wisniewski and Pawn America note that after Wisniewski called police dispatch, the conduct of El-Ghazzawy at Pawn America was considered to be a "suspicious situation requiring

the Court finds that the statement accusing El-Ghazzawy of selling counterfeit watches constitutes defamation *per se*.

## 2.  Statutory immunity

Wisniewski and Pawn America next assert that El-Ghazzawy's defamation claim must be dismissed because they are entitled to immunity pursuant to Minnesota Statute Section 604A.34.  This statute provides in relevant part that "[a]n individual who in good faith seeks assistance from, or reports apparent unlawful conduct to, law enforcement is not liable for civil damages as a result of that action."  Minn. Stat. § 604A.34.  El-Ghazzawy asserts that Wisniewski and Pawn America are not shielded from liability by this statute because there is a genuine issue of material fact regarding whether Wisniewski's report was made in good faith.  (Mem. in Opp'n at 22-24.)  The Court agrees.

The "good faith" requirement of Minnesota Statute Section 604A.34 has not yet been addressed by any Minnesota court.  However, the Minnesota Supreme Court has generally held that a person cannot act in good faith when they act "in reckless disregard of the truth."  State v. Doyle, 336 N.W.2d 247, 252 (Minn. 1983).  The existence of good faith is a question of fact.  Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

---

investigation," not a crime.  (Mem. in Supp. at 26.)  However, the record does not indicate if this situation was deemed suspicious and not criminal, because an investigation was needed to substantiate Wisniewski's claims, or because the selling of a counterfeit watch, without more, does not constitute a crime.

There is evidence in the record supporting the contention that Wisniewski made the alleged defamatory statements with reckless disregard for the truth.  First, Wisniewski definitively asserted that all of the watches presented by El-Ghazzawy were counterfeit. However, Wisniewski had only inspected one watch and had no basis upon which to opine on the authenticity of the others.  Second, Wisniewski knew that Garner had inspected the Breitling watch and determined it to be authentic.  In fact, Wisniewski had approved the inspection and purchase of the watch, thereby undermining his unequivocal statement that the watch was counterfeit.  Third, Wisniewski stated that El-Ghazzawy was standing in the store attempting to sell at least five additional counterfeit watches. However, Wisniewski had not inspected any of these watches, and thus had no basis to state they were counterfeit.[11]  Fourth, Wisniewski did not avail himself of the resources and information available to him in determining the authenticity of the watches.  For example, he did not discuss the authenticity of the watches with El-Ghazzawy or Schmidt, both of whom were present at the Pawn America store.  Moreover, Wisniewski did not attempt to call Garner, and man who had previously authenticated the Breitling. Finally, the evidence indicates that Wisniewski's physical inspection of the watch was extremely brief, less than a minute and a half.  Accordingly, viewing the evidence in the light most favorable to El-Ghazzawy, there is a genuine issue of material fact regarding

[11] Wisniewski and Pawn America contend that even if Wisniewski's statements to police dispatch were unequivocal regarding the authenticity of the watches, he later qualified his statement when Berthiaume arrived, telling her that he *believed* the watches were counterfeit. (Mem. in Supp. at 26.)  However, Wisniewski and Pawn America cite no authority standing for

Wisniewski's good faith. Therefore, Wisniewski and Pawn America have not established their entitlement to immunity pursuant to Minnesota Statute Section 604A.34.

### 3. Qualified privilege

Finally, Wisniewski and Pawn America contend that El-Ghazzawy's defamation claim must be dismissed because they are entitled to common-law qualified privilege. Defamatory statements are not actionable if the statements are "privileged and the privilege is not abused." Keuchle v. Life's Companion P.C.A., Inc., 653 N.W.2d 214, 220 (Minn. Ct. App. 2002). To establish entitlement to a qualified privilege, a statement must be made in good faith, on a proper occasion, from a proper motive, and based on reasonable cause. Stuempges, 297 N.W.2d at 256-57.

In this case, Wisniewski and Pawn America cannot establish entitlement to qualified privilege because there is a question of fact as to whether Wisniewski's statements were made upon reasonable cause. An individual must have "reasonable or probable grounds for believing in the validity of the statement" in order to be protected by qualified privilege. Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 380 (Minn. 1990). However, "[w]here evidence of reasonable or probable grounds for believing in the validity of the potentially defamatory statements is such that it permits of more than one conclusion regarding the existence of reasonable or probable cause, the question becomes one of fact for the jury." Id. at 380 n.4.

the proposition that defamatory statements can later be qualified so as to not be defamatory.

As described above, there is evidence in the record supporting El-Ghazzawy's contention that Wisniewski made the alleged defamatory statements with reckless disregard for the truth. This same evidence indicates that Wisniewski may not have had reasonable or probable cause to accuse El-Ghazzawy of selling counterfeit watches.

In <u>Smits v. Wal-Mart Stores, Inc.</u>, 525 N.W.2d 554, 557-58 (Minn. Ct. App. 1994), the Minnesota Court of Appeals determined that although good-faith reports of suspected criminal activity can be protected by qualified privilege, such protection was not warranted when the defendant conducted an insufficient investigation into the criminal conduct alleged. While defendant's employees had observed plaintiff's suspicious conduct and believed the plaintiff to have stolen a camera, defendant's assistant manager could not confirm whether a camera was in fact missing after a brief investigation. <u>Id.</u> at 556. Nevertheless, the assistant manager called the police and unequivocally reported a stolen camera. <u>Id.</u>

Here, we have a similarly defective investigation into the authenticity of the watches. Wisniewski knew the Breitling watch had been previously authenticated, and had authorized the purchase of the watch, but nevertheless determined that the watch was counterfeit after a less than two minute inspection. Then, he unequivocally stated that <u>all</u> the watches presented by El-Ghazzawy were counterfeit, without a basis to do so. Accordingly, the alleged defamatory statements exceeded the scope of Wisniewski's knowledge and were unequivocal accusations of criminal activity. <u>Cf.</u> <u>Hirtzinger v. Pinnacle Airlines, Inc.</u>, Civ. No. 06-1609, 2008 WL 835644, at *7 (D. Minn. Mar. 27,

2008) (Schiltz, J.) (noting that defendant had reasonable grounds to make a statement when the statement did not accuse plaintiff of criminal activity, but simply communicated suspicions and sought investigatory assistance).  Accordingly, a genuine issue of material fact exists as to whether Wisniewski had reasonable or probable cause to make the relevant statements to police dispatch, entitling him to qualified immunity.  Thus, El-Ghazzawy's defamation claim will stand.

### B.    False imprisonment

El-Ghazzawy's second and final state-law claim is for false imprisonment. Wisniewski and Pawn America argue that this claim must be dismissed as a matter of law.  The Court agrees.

"[T]he elements of false imprisonment are (1) words or acts intended to confine, (2) actual confinement, and (3) awareness by plaintiff that he is confined."  Blaz v. Molin Concrete Prods. Co., 244 N.W.2d 277, 279 (Minn. 1976).  However, "[a] private party 'is not liable for false imprisonment for conveying information about suspected criminal activity unless that party directly persuades or commands the police to detain the suspect.'"  Shqeirat v. U.S. Airways Group, Inc., 645 F. Supp. 2d 765, 793 (D. Minn. 2009) (Magnuson, J.) (quoting Smits, 525 N.W.2d at 558).  Accordingly, a person's conduct must rise "to the level of instructing the police to arrest a person" in order for liability to attach.  Id.  "It is not enough . . . that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest."

Restatement (Second) of Torts § 45A (1965).[12]

In this case, there is no evidence that Wisniewski, or any other Pawn America employee instructed Berthiaume to arrest El-Ghazzawy. Indeed, Berthiaume handcuffed El-Ghazzawy before speaking with Wisniewski. Berthiaume testified that she alone made the decision to arrest El-Ghazzawy.

El-Ghazzawy contends that Wisniewski instigated the arrest of El-Ghazzawy by asking "that the dispatcher act urgently." (Mem. in Opp'n at 27.) However, upon review of the dispatch transcript, there was no specific request by Wisniewski that dispatch act urgently. (Angolkar Aff. Ex. B.) El-Ghazzawy further argues that Wisniewski instigated his arrest by "exaggerating the scope of the supposed crime." (Mem. in Opp'n at 27.) However, El-Ghazzawy cites no authority standing for the proposition that an "exaggeration" can constitute an "instruction" to arrest.

Finally, El-Ghazzawy contends that because Wisniewski supplied false information to the police, for which there was no basis in fact, he instigated the arrest. (Id. at 28.) However, the Minnesota Court of Appeals addressed this very issue in Smits. 525 N.W.2d at 558. There, the Minnesota Court of Appeals found that defendant was not protected by qualified immunity for making defamatory statements, when defendant made accusations of a crime to police when lacking reasonable grounds upon which to make the accusation. Id. at 557-58. Despite the viability of the defamation claim, the court held

---

[12] The Minnesota Court of Appeals has relied upon the Restatement (Second) of Torts in addressing false-imprisonment claims. See Smits, 525 N.W.2d at 558.

that plaintiff's false-imprisonment claim failed because there was no instruction by the defendant to arrest, but instead, defendant simply reported a suspected crime. Id. at 558. Similarly, there is no evidence of an instruction to arrest in this case. Accordingly, El-Ghazzawy's false-imprisonment claim fails and will be dismissed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Berthiaume's Motion for Summary Judgment (Doc. No. 21) is **DENIED** and Wisniewski and Pawn America's Motion for Summary Judgment (Doc. No. 24) is **GRANTED IN PART** and **DENIED IN PART**. With respect to El-Ghazzawy's false-imprisonment claim (Count No. III), Wisniewski and Pawn America's Motion is **GRANTED** and the claim will be **DISMISSED WITH PREJUDICE.** The Motion is **DENIED** in all other respects.


Dated: April 16, 2010                          s/Richard H. Kyle
                                               RICHARD H. KYLE
                                               United States District Judge